IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Audrel Jack Watson, )
    Plaintiff, )
 )
v. ) 1:14cv1315 (GBL/MSN)
 )
Harold Clarke, et al., )
    Defendants. )

### MEMORANDUM OPINION

This matter comes before the Court upon defendant's Motion for Summary Judgment. Audrel Jack Watson, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that several defendants were deliberately indifference to his serious medical needs. Except for his claims against defendant Dr. Greggory Bowles, this Court dismissed plaintiff's claims against all other named defendants, and the United States Court of Appeals for the Fourth Circuit affirmed this Court's decision. See Dkt. Nos. 23, 60. The only remaining defendant in this case, Dr. Greggory Bowles, has now filed a Motion for Summary Judgment, as well as a memorandum of law and several supporting exhibits. Dkt. Nos. 47, 48. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a response. Accordingly, the matter is now ripe for disposition. For the reasons that follow, defendant's Motion for Summary Judgment must be granted. Plaintiff's pending motions must be denied, as moot.

### I. Factual Background

Plaintiff's allegations arise out of defendant's alleged failure to treat his severe toothache. Plaintiff has been confined at Lawrenceville Correctional Center ("Lawrenceville") since July

2012. Jones Aff. [Dkt. No. 48, Ex. C], ¶ 5. Defendant Dr. Greggory Bowles was the Chief Dentist at Lawrenceville at all times relevant to this lawsuit. Bowles Aff. [Dkt. No. 48, Ex. A], ¶¶ 1, 3.

On May 3, 2013, plaintiff submitted a request for medical care complaining that his left molar was "very very sensitive to tap water." Compl. [Dkt. No. 1], Ex. 1. Plaintiff submitted an additional request for dental care on May 6, 2013, at which time he complained of more severe pain. Compl. ¶ 13. Plaintiff allegedly did not receive a response to this request. Id.

In the early morning, at 12:29 a.m., on May 13, 2013, plaintiff filled out an emergency grievance, explaining that his face was swollen and that he was in "excruciating pain." Id. ¶ 16. Dr. Bowles was not present at Lawrenceville at this time. Bowles Aff. ¶ 12. A correctional officer took the emergency grievance to the medical wing. There, the nurse on duty told the correctional officer that Lawrenceville "does not treat for emergency pain." Compl. ¶ 17. Later that same morning, another correctional officer personally requested medical staff to examine plaintiff. The nurse on duty at that time told the officer that "they may or may not work [plaintiff] in." Id. ¶ 19. Plaintiff was seen by Dr. Bowles on May 14, 2013, the next day - less than 36 hours after his initial complaint of facial swelling and toothache – allegedly during a previously-scheduled appointment "on an unrelated issue." Id. ¶ 23; Bowles Aff. ¶¶ 8, 12.

During Dr. Bowles' examination of plaintiff on May 14, 2013, plaintiff complained that he had a toothache and that he had been experiencing cold sensitivity in tooth No. 19. Bowles Aff. ¶ 8; Hightower Aff. [Dkt. No. 48, Ex. D], ¶ 11; Dental Rec. [Dkt. No. 48, Ex. E], at 3. Dr. Bowles observed advanced periodontal disease at tooth Nos. 14 and 15, and he determined that these two teeth were in need of treatment. Id. He prescribed Doxcycline 100 mg, an oral antibiotic, twice a day for 15 days and 1000 mg of Tylenol three times a day for 21 days. Id.;

Compl. ¶ 24. Plaintiff had already been prescribed another pain medication, Naproxen 500 mg, to be used concomitantly. Pharmacy Rec. [Dkt. No. 48, Ex. F], at 8.

Dr. Bowles discussed plaintiff's medications with him, and plaintiff did not complain at any time during these conversations about the medications he received. Bowles Aff. ¶ 9. Dr. Bowles did not prescribe advanced pain medications containing narcotics because such medications are often abused and misused in the correctional setting; furthermore, Dr. Bowles did not believe a narcotic was medically necessary to manage plaintiff's pain. Id.

Plaintiff states that he suffered from "excruciating pain" for five more days, and that the Tylenol "showed no noticeable relief in [his] pain." Id. ¶ 25. Plaintiff asserts that Dr. Bowles showed deliberate indifference to his serious medical needs. He specifically faults the defendant for failing to properly triage his pain by examining him as soon as possible, rather than waiting until May 14, 2013. See, e.g., Resp. to Court's Order/Am. Compl. [Dkt. No. 15], at 19-20, 22-24.

A. Plaintiff's Grievance History

Virginia Department of Corrections Operation Procedure 866.1 ("OP 866.1") provides the inmate grievance procedures at Lawrenceville. Jones Aff. [Dkt. No. 48, Ex. C], ¶ 7. Plaintiff was oriented to these procedures on or about July 27, 2012. Id. Plaintiff's grievance records are attached to Defendant's Memorandum in Support of Motion for Summary Judgment. Dkt. No. 48, Ex. I.

Beginning May 20, 2013, plaintiff began filing several Informal Complaints related to his dental care, including Informal Complaint Numbers ("INF Nos.") 1521, 1522, and 1523 on May 20, 2015; INF Nos. 1595, 1596, and 1597 on May 29, 2013; INF No. 1748 on June 14, 2013; INF Nos. 1800 and 1801 on June 19, 2013; and INF Nos. 1814, 1815, and 1816 on June 20,

3

2013.[1]  Id.  Plaintiff then filed Regular Grievances associated with INF Nos. 1521, 1522, 1595, 1596, 1748, 1800, and 1801.  With the exception of one,[2] all of plaintiff's Regular Grievances were determined to be unfounded.  Plaintiff appealed only INF. No. 1521, and he obtained a Level II Response to INF No. 1521 on August 18, 2013.  Id.  His grievance was determined to be unfounded.  Id.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  The moving party bears the burden of proving that judgment on the pleadings is appropriate.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution.  Id. at 322.  Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts that create disputed factual issues.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Those facts which the moving party bears the burden of proving are facts which are material.  "[T]he substantive law

---

[1] Plaintiff also filed Informal Complaints on June 6, 2013; June 21, 2013; and July 11, 2013, that were not logged because the issues raised in those complaints were repetitive.  Jones Aff. ¶ 9.
2 INF No. 1748 related to the time of day that Lawrenceville notified inmates of the scheduling of medical appointments.  As a result of plaintiff's Informal Complaint, Lawrenceville changed the time at which inmates were notified of the scheduling of medical appointments from 1:30 a.m. to 5:00 a.m.

will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

### III. Analysis

#### A. Plaintiff Failed to Exhaust His Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance"

5

which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As the Supreme Court has noted, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed for procedural deficiency. Woodford, 548 U.S. at 96. To prevent this type of abuse, this Circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. Moore, 517 F.3d at 725, 729.

Plaintiff as a Virginia inmate is required to exhaust the claims raised in the instant complaint in accordance with the Virginia Department of Corrections ("VDOC") grievance procedures. In particular, he must comply with VDOC OP 866, which provides multiple levels of administrative remedies in the form of inmate grievances. Per OP 866-7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within fifteen days of receiving an informal complaint. See OP 866-7.13. After seeking informal resolution, an inmate may file a regular grievance to the warden or superintendent. The grievance must be filed within thirty days of the underlying incident or occurrence. See OP 866-7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. See OP 866-7.15.

Proper administrative exhaustion requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004). As has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch,

50 F.Supp.2d 544, 548 (E.D. Va. 1999) (Ellis, J.). A prisoner now must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective. Porter v. Nussle, 534 U.S. 516, 524 (2002). Moreover, an inmate now must exhaust administrative remedies even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va. 2005) (Hilton, J.), aff'd, 127 Fed. App'x 680 (4th Cir. May 10, 2005).

Of the numerous informal complaints filed by plaintiff related to his dental care at Lawrenceville, plaintiff has only exhausted his administrative remedies with respect to INF No. 1521, which was followed by Regular Grievance No. LVCC-13-Reg-203. Jones Aff. ¶¶ 10, 11; Dkt. No. 48, Ex. I at 3-4. That grievance reads, in pertinent part, "Medical did not work me in on an appointment on 3/13/15 as requested by Sgt. Britt. I was in great pain!" Plaintiff has failed to exhaust his administrative remedies with respect to INF Nos. 1522, 1523, 1595, 1596, 1597, 1748, 1800, 1801, 1814, 1815, 1816 and all of the associated Regular Grievances. Id.

Aside from the complaints made by plaintiff in this INF No. 1521 and the associated grievance, plaintiff seeks to impose liability on Dr. Bowles based upon three additional contentions. First, plaintiff alleges that Dr. Bowles was deliberately indifferent to his medical needs when he failed to treat plaintiff with respect to his 5/7/13 Offender Request Form indicating he was experiencing tooth sensitivity. The issues related to plaintiff's tooth sensitivity are separate and distinct from those related to the inflammation plaintiff was experiencing on May 13, 2013, particularly because it was a different sensation affecting a completely different tooth. Bowles Aff. ¶ 11. Plaintiff has not exhausted his administrative remedies with respect to his tooth sensitivity. The only Informal Complaint that even remotely related to his Offender Request Form is INF No. 1597, in which plaintiff alleged it took "1 ½

7

weeks" to get a dental appointment. Dkt. No. 48, Ex. I at 23. A response was made to this complaint, and plaintiff never filed a Regular Grievance.

Second, plaintiff alleges that Dr. Bowles was deliberately indifferent to his medical needs because his pain management was inadequate. He specifically contends that Tylenol and Naproxen were ineffective and that he should have been prescribed a narcotic. The only Informal Complaint related to plaintiff's pain management is INF No. 1522, in which plaintiff states,

> The dentist was unprofessional in that he did not have my medicine at the pill line at 12m like he said he would on 5/14/13. I was in great pain and had a abcess [sic] that needed prompt attention. It took me at least 40 minutes and the time and disruption of 3 c/o's and 1 nurse to get the medication I needed.

Dkt. No. 48, Ex. I at 11. Plaintiff never received a Level II response to his associate grievance, so he did not exhaust his administrative remedies with respect claims about the adequacy of his pain medication.

Finally, plaintiff alleges that Dr. Bowles violated his Fourteenth Amendment Due Process rights by allegedly failing to provide his name and license number, as well as the names and license numbers of his assistants. Plaintiff filed INF No. 1801 related to this issue, and he likewise filed a Regular Grievance related to this claim. Dkt. No. 48, Ex. I at 30-31. However, plaintiff has failed to exhaust his administrative remedies with respect to this claim because he never sought a Level I and Level II response to this grievance.

As plaintiff has failed to exhaust his administrative remedies with respect to the complaints and claims set out in INF Nos. 1522, 1523, 1595, 1596, 1597, 1748, 1800, 1801, 1814, 1815, 1816 and all of the associated Regular Grievances, this Court must dismiss his

claims related to tooth sensitivity, pain management, and Due Process violations, pursuant to Section 1997e of the PLRA.

### B. Defendant Did Not Violate Plaintiff's Eighth Amendment Rights

With respect to plaintiff's claim that was exhausted, specifically that "[m]edical did not work me in on an appointment on 5/13/13 . . . . I was in great pain," summary judgment in favor of Dr. Bowles is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that Dr. Bowles did not violate plaintiff's Eighth Amendment rights.

#### I. Dr. Bowles Cannot Be Held Liable in his Supervisory Role

Supervisory officials can be held liable for constitutional injuries inflicted by their subordinates only in certain circumstances. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). Supervisory liability is premised on the "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). Therefore, to establish supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (internal citations omitted).

The undisputed evidence presented by Dr. Bowles shows that he had no personal knowledge that plaintiff was at any "unreasonable risk" of constitutional injury. Dr. Bowles was not present at Lawrenceville when plaintiff filed his Emergency Grievance on Monday, May

13, 2013 at 12:29 a.m., and Dr. Bowles' next working day was on Tuesday, May 14, 2013. Plaintiff was seen and treated by Dr. Bowles on that day. There is simply no evidence that Dr. Bowles had any knowledge of plaintiff's medical needs prior to seeing him on May 14, 2013. As discussed below, plaintiff has failed to establish any claim that Dr. Bowles personally committed any actions that violated plaintiff's rights. Thus, Dr. Bowles is entitled to summary judgment with respect to his alleged supervisory liability.

## II. Dr. Bowles Was Not Deliberately Indifferent to Plaintiff's Medical Needs

It is undisputed that, despite plaintiff's allegations to the contrary, Dr. Bowles was not deliberately indifferent to plaintiff's dental issues. To prevail on a claim for deliberate indifference that rises to an Eighth Amendment violation, plaintiff must establish facts sufficient to show that a jail official was deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. App'x 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).

Second, plaintiff must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of medical malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege specific acts or omissions by the defendants that prove a deliberate indifference to basic standards of decency. See Estelle, 429 U.S. at 106;

10

Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Beorn, 848 F.2d at 851 (internal citations omitted). Medical malpractice does not give rise to a constitutional violation, nor does disagreement between the inmate and the prison about the proper way to treat a medical condition. See, e.g., Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Dr. Bowles does not appear to contest that plaintiff had a serious medical need on May 13, 2013; however, plaintiff fails to establish the second prong of the deliberate indifference test. As previously discussed, plaintiff's periodontal inflammation is a separate issue from any previous tooth sensitivity, and plaintiff first complained of dental inflammation on Monday, May 13, 2013 at 12:29 a.m. Compl. ¶ 16; Bowles Aff. ¶ 11. Dr. Bowles only works four, ten-hour (10) shifts, on Tuesday – Friday each week. Bowles Aff. ¶ 12; Hightower Aff. ¶ 7. Plaintiff was therefore seen by Dr. Bowles in the morning of Dr. Bowles' next available working day, Tuesday, May 14, 2013, which was less than 36 hours after plaintiff had filed his Emergency Grievance.[3] During this appointment, Dr. Bowles diagnosed plaintiff with acute periodontal inflammation at tooth Nos. 14 and 15. Bowles Aff. ¶ 8; Dental Rec. at 3.

The periodontal inflammation plaintiff was experiencing is considered a Class 3 medical condition under VDOC Operating Procedure 720.6,[4] and such a condition may be considered a "serious medical need" under the deliberate indifferent analysis. Bowles Aff. ¶ 10. Although

---

[3] Plaintiff filed INF No. 1522 on May 16, 2013, in which he complains that it took 40 minutes for the nurse to have his medication available at the noon pill pass on May 14, 2013. See Dkt. No. 48, Ex. I at 11. The fact that plaintiff acknowledged that his medication had been prescribed to him before 12:00 p.m. on May 13, 2013, establishes that he saw Dr. Bowles prior to that time.

[4] This procedure sets forth four different dental classifications for inmates at Lawrenceville. Class 3 is identified as: "Urgent dental conditions, while not life threatening, have high priority and require prompt attention due to extreme pain or need for immediate intervention to control or prevent the exacerbation of the condition." See Dkt. No. 48, Ex. B; see also Bowles Aff. ¶ 5.

this condition is rarely life threatening, toothache and infection are given the highest priority by Dr. Bowles. Id. It is undisputed that it is not unusual for an inmate to wait up to 48 hours to be seen for periodontal inflammation. Likewise, it is not unusual for a non-inmate experiencing the same condition to need to wait up to 48 hours to be seen by a dentist in private practice. Id. Dr. Bowles prescribed plaintiff an oral antibiotic, Doxycycline, as well as Tylenol on May 14, 2013, which plaintiff was to use concomitantly with his already prescribed Naproxen, another pain medication. Bowles Aff. ¶ 9; Dental Rec. at 3. Dr. Bowles scheduled a follow-up appointment with plaintiff and subsequently extracted plaintiff's tooth No. 14 on June 11, 2013. Bowles Aff. ¶¶ 14-15; Dental Rec. at 2. Based upon plaintiff's request, Dr. Bowles did not extract tooth No. 15 at that time, but Dr. Bowles believed it would become medically necessary to remove it in the future, and he advised plaintiff of this prognosis. Id. Based upon the undisputed evidence presented, the timing and quality of plaintiff's treatment on May 14, 2013 was reasonable and medically appropriate, and Dr. Bowles is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, defendant's Motions for Summary Judgment must be granted. An appropriate Order shall issue.

Entered this 24th day of March 2016.

Alexandria, Virginia

_____/s/_____
Gerald Bruce Lee
United States District Judge